In the year 08-13-11, Voss Industries incorporated against Yamaha Motor Corporation USA. Mr. Anderson. Thank you, your honor. May it please the court. The district court in this action erroneously construed a number of limitations that are an issue, and the three patents ensued in this action. Perhaps the most egregious misconstruction was with regard to the term base or base section, which appears in all three of the patents. The district court construed, began its construction of base section by looking at the dictionary and the dictionary definition for the term base. And in its brief, Yamaha also starts from the dictionary definition for the term base. That is at page 16 of their brief. However, properly construed, if you begin with the language of the claim and look at the specifications, it is clear that base section is not the bottom support structure of the snowmobile seat. But is only at least a part of the bottom of the seat. The claims that use base or base section are comprising claims, indicating that something else or additional elements may be part of those claims. When one looks at the specifications of each of the patents, the specifications explicitly and clearly state that the term base section, it forms only at least part of the bottom. In that regard, you can look at column four, lines 44 to 45 of the 149 patent, which says that the base section. But Mr. Anderson, the lower court specifically pointed out in its opinion, at page 16, which is your additional appendix, 830. Accordingly, the intrinsic evidence consistently demonstrates that the meaning of base and base section is used throughout the vast patents of the bottom support structure of the snowmobile seat. In strewing the base and base in each of the asserted patents, the court is guided not only by the intrinsic evidence, which they use, associated with the patent, but also the intrinsic evidence associated with the entire family of patents. So where are you getting the aspect that he used the dictionary definition to start? Since he did at least make the attempt to use the intrinsic evidence. Well, he made an attempt, I believe, but an incorrect and insufficient attempt. What he did was he started with, in our view, and as Yamaha indicates in their brief, the dictionary definition, and then went back in effect to see, well, is there something that would vary the construction from the dictionary definition? And that's an incorrect procedure under this court's precedence. The starting point has to be the claim and the specification. And I think the specification, when you look at the specification, it is crystal clear, it is repeatedly said, both in the parent application, which is not an issue in this suit, and then in each of the three continuation and part applications, that the base section simply forms, and I'm quoting, at least part of the bottom of the seat. And it is the at least part of aspect which the district court ignored and read out of, if you will, the claim. It brought in or it narrowed the claim improperly by requiring that the base section be the entirety of the bottom when the specifications in each patent repeatedly made clear that it's only at least a part of the bottom. So that restriction, at least part of the bottom, which is in the evidence, you're saying basically that was misread by the court, and the base itself could be limited to a part of the bottom. The base section needs only be a part of the bottom, correct. That is absolutely correct. What is the rest? I'm sorry? What is the balance? The balance of the base section could be something else as, for example, in the 380 patent, it indicates that the, excuse me, not 380, the 630 patent. It indicates that the base section or the bottom is disposed directly on or directly or indirectly mounted on a snowmobile, and it says the base section forms at least part of the bottom, which is then directly or indirectly mounted on the snowmobile. There could be some additional structure in between. Similarly, in the 317 patent, it says that the base section can be mounted directly on the snowmobile such that other support structure is unnecessary and to further reduce the rate. Alternatively, the base structure can be mounted to other support structure that in turn can be mounted on the snowmobile. While you're on a particular patent figure, you're all the same, but on 630 specifically, figure 4, I still have a hard time trying to figure out the difference between the 22 identification and the 42 identification. Do you see those two numbers? Yes, sir. They're pointing to the same, what looks like the same plane of surface. They do appear to look to point to the same surface, although I believe that 22 is intended to be a more all-encompassing description. 22 is described as the bottom, and 42 says it's a lower surface that forms at least part of the bottom, indicating that it is a subset. The requirement, I believe, in the claims and in the patents is that the base section form at least part of the bottom. It does not have to be all of the bottom. That would be 42, then? Yes, sir. And not 22? And not 22. Yes. That's rather misleading, then, if you're looking at those figures. I don't know that it's misleading. I would agree with you that if you look at the figures without reference to the specification, they're not models of clarity. But when you look at the specification and the language that says that the lower surface, 42, forms at least part of the bottom, 22, I think it is clear that the base section is a subset of the bottom and that the base section simply has to be a part of the bottom of the seat and not the entirety of the bottom of the seat, which is how the district court construed the limitation. So that would be the difference between the base and the base section? That would be the difference between the bottom and the base section. Yeah. Well, base is used in the claims interchangeably with base section. Yeah. So base and base section are the same, but bottom is different. And by construing the limitation that the base section has to be the bottom of the seat, it improperly narrows the scope of the claims. The district court, I guess indirectly at least without coming out and saying it, also suggested that the prosecution history of the parent somehow resulted in a narrowing disavowal of the scope of the claim or base section. And indeed, Yamaha makes that argument in their brief. However, I believe if you look at the prosecution history of the parent application, which is an issue here, there's nothing in the prosecution histories of the 149, 630, or 317 patents that have any impact whatsoever on construction. They basically went through cleanly except for a requirement for a terminal disclaimer, adult patent and terminal disclaimer. In the 380 patent, there is no prosecution. There is no clear and unequivocal narrowing disavowal. All of the arguments that were made to distinguish the claimed invention over the prior art were made to point out that the difference between the prior art is that the claimed invention has two different cellular structures, the open cell structure on the top and the closed cell structure below that. And that it did not have a bottom that was entirely a heavy material, such as plastic or wood or metal, which was in the prior art. All of the arguments make it clear that we're different because we have at least part of the bottom is the base section. If you will, the base section is not entirely metal or wood or plastic. And so there is no basis for a finding that somehow during the prosecution of the patent, of the parent application, that the inventor gave up what is otherwise I think a very clear description in the specification that the base section only has to form at least a part of the bottom. Now, in addition, the district court misconstrued obviously a number of other limitations at issue. For example, the court construed the limitation of adjacent, which is in the 317 patent claims 5, 7, and 8, as being next to or adjoining. Now, the only indication in the 317 patent of what is meant by adjacent, specifically here we're talking about the storage compartment being adjacent to the open cell foam, is in the drawings. And the drawings, if you look at those, figures 4 and figure 10, show in one instance the storage compartment is, if you will, next to or adjoining the open cell foam. But in the other drawing, it shows that it's simply close to the open cell foam. And however, despite that indication, that clear indication in the drawings that adjacent should not be limited to next to or adjoining, the court instead, or the court rejected our post construction of close to. We think the proper construction for adjacent should be close to because that is what's implied by the drawings in the 317 patent figures 10 and 4. And I gather that this would distinguish the accused structure if it has to be touching. If it has to be touching, it would distinguish the accused structure. But the drawings clearly show, for example, in figure 10, excuse me, figure 4 of the 317 patent, you can see that the open cell structure, which I believe is item 64, is close to the storage compartment, which is item 48. In between there, the other diagonally hashed area, item 52, is closed cell foam. And then if you look at figure 10, you'll see that the open cell foam actually touches the storage compartment up at the top. If you look at figure 4, it has to be not only close to, but not especially close to, again, as long as it's nearby. Well, if it's nearby, it's fine. The space there is not all that significant. We're talking about, I believe, a matter of inches. But it's in the claim, and we have to assume that that's significant. Yeah, it certainly has to be that it's nearby or that it's close to. I would consider that 64 is close to 48, the way that it's shown there. Certainly, it doesn't limit adjacent to being next to, as the district court argued. Unless your honors have some further questions at this point in time, I think I'll reserve the balance of my time for rebuttal. Thank you. May it please the court. Because we believe they are dispositive of this appeal, I want to focus my remarks on the issues relating to the construction of base section, or its equivalent base, and the construction of adjacent. As indicated, all of the asserted claims, except for Claim 5 of the 317 patent, include the limitation of base section or base. And Claim 5 of the 317 patent includes the limitation of adjacent. And BOSS has admitted that according to the district court's construction, that these limitations are missing from the accused Yamaha Stonewheel seats. So should this court affirm the construction of these terms, there is no need to evaluate the other disputed terms. And that's consistent with this court's ruling in the INPRO versus T-Mobile case. However, before addressing the construction of base section and adjacent, I want to mention that BOSS has made no show that the issues it raised regarding the discovery motions and the level of ordinary skill have any bearing on the non-infringement judgment. I believe they were raised by BOSS in its briefs. They were raised, but are they before us? They are. They requested that the lower court's determination in denying those discovery motions was incorrect. And we have, of course, asserted that it's not relevant to the non-infringement judgment that these discovery motions go entirely to either invalidity or unenforceability, which was dismissed from the case. Is that right? Because if we agree with the claim construction, they still, I gather, have an opportunity to go back to the district court and argue about fees? They do have. Is that why the sanctions might be appropriate? That's true. Because there were such serious abuses as we've been briefed. Well, I suppose they do have the, both parties have the right to go back. I'm not sure that BOSS would have the right if the claim constructions are affirmed, but Yamaha would have the right to go back and seek fees if it were. Well, if we reverse the claim construction and send it back, that means that even the account of claims would be revived because they were dismissed without prejudice at that point. That is correct. And then the entire issue of discovery would also be raised. Then the issue of discovery would be raised again in the lower court, and these discovery issues were raised on multiple occasions before the district court and ruled on by the district court. Do you think the issue of the discovery matter and the abuse of discretion on discovery is before us at this point? Is it right for us to take a look at it? I believe it would be advisory for the court to take a position on that at this time because the only issue before this court really is the non-infringement judgment. Also, with regard to the district court's determination with regard to the level of ordinary skill, contrary to what BOSS argued in its brief. Mr. Weiss, I'm just wondering, you have limited time, and the focus of that issue didn't come up in the opening argument, and the focus of the opening argument was all on the base section limitation. Use your time as you wish, but that's probably what you might want to focus on. Thank you, Your Honor. Well, let me start out by saying that whether the district court started with the dictionary is really not significant as long as it considered the intrinsic evidence. But at what point should it consider the intrinsic evidence? Well, according to Stortz. Start out with the intrinsic evidence and then proceed if the intrinsic evidence is not clear enough at that juncture of the specifications and the retribution history. Well, according to the Phillips case, Your Honor, it can begin with the dictionary definition and it can then go to look at the specification. I don't think that's what the Phillips case said. Well, I would point to the Phillips case at 415 Fed 3rd at page 1324, Your Honor. It says to start with the dictionary? It doesn't say start with the dictionary. It indicates that there's no... The dictionary is instructive if the intrinsic evidence is not clear. What it says, Your Honor, is that there's no specified procedure as to how you approach the claims. But a preferred approach is? I think the preferred approach is that you do not give the dictionary meaning a precedent over the specification, but that both can be considered. Both can be considered, but one should not be weighed more than the other. Or if the intrinsic evidence is clear, you don't need to go to the dictionary. I think that's probably correct, although I think there's nothing that prevents the judge to look at the dictionary meaning in conjunction with the intrinsic evidence. In conjunction with, but not to start off with the dictionary meaning. Well, I haven't found the quote, but it's at page 1324. Phillips states, in that process we recognize there is no magic formula or catechism for conducting claim construction. For example, a judge who encounters a claim term while reading a patent might consult a general purpose or specialized dictionary to begin to understand the meaning of the term before reviewing the remainder of the patent to determine how the patentee used the term. How it used the term if it's not clear in the intrinsic evidence. Well, I don't disagree with you on that. But as I say, I don't think there's any magic. No, there's no magic to it. But I think the proper approach would be to use the intrinsic evidence first. And the district court did that. It went to the intrinsic evidence. Because that meaning happens to be consistent with the dictionary meaning. For example, each of the boss patent specifications include a passage which states that the base section provides support for the seat. And the patent drawings for each of the boss patents also show the base section at the bottom of the seat. And during the prosecution of the boss patents, boss also made it clear in distinguishing the prior art that the base section is the bottom most structure of the snowmobile seat. And with regard to this desire by boss to want to add the limitation at least part of the bottom, boss misconstrues the language in the specification. Boss relies on the language in the specification which states, quote, the base section 240 has a lower surface 242 that forms at least part of the bottom 222. And that's found at the boss brief at pages 20 to 21. And boss contends that this means that the base section need only make up at least part of the bottom. But this language does not say that the base section forms at least part of the bottom. Instead, this language merely indicates that more than one lower surface of the base section can form the bottom of the base. If you look at figure four, for example, you'll see that the boss patent shows at least two lower surfaces, 46 and 42, which form the bottom. It would be the same. But if you look, you'll see that it has two lower surfaces and the one lower surface is higher than the other. Because one that's, I guess, near the front of the snowmobile. That's correct. What would be the difference then between 22 and 42? 22, I think, broadly refers to the base section, whereas 42 and 46 refer to the lower surfaces of the base section. I thought 22 was the generic base and 42 and 46 were the base sections. No, I don't think that's correct. Yes. There are other attempts by boss to read into the claims, various limitations that are not properly read into the construction of the base section. For example, it would be improper to read into the construction that base section comprises a cellular structure. The term cellular structure is not even used in the boss patent specifications. Well, excuse me. I'm still confused about figure 4 because if you go back to the specific references, it talks about section 40 as being a base section. Take a look at that. I'm looking at 630. Yes, sir. Which column, Eric? It's column 3. Right. It speaks to snowmobile seat 10 as a base section 20. Correct. And also the base section 40 and then it goes on to speak to base section 40. So each one of those is referred to as a base section. Okay. Now, the lower surface 42, is that also a base section? I'm not quite sure. Well, it's part of the base section. It is the lower surface of the base section. So that would be the base. 42, no. Base and base section are synonymous. They both have the same meaning. They're used interchangeably. They're used interchangeably. Yes, that's correct. But when you're talking about section 22, that's the bottom of the base section. Well, that's one interpretation. Section 46 is also a bottom of the, or at least a lower surface of the base section. And so can 42. That is correct. That's the point that we were trying to make, that relying on that language as they did in the specification is not saying that the base section is at least part of bottom. It's saying a surface is at least part of bottom. The reason for this discussion, for the debate, but could you, even if you need to go briefly outside of the record that's immediately before us, quickly outline the difference that it would make in terms of whether there would or would not be liability for infringement on one kind of construction or the other? Well, I think if you were to go back to the expert report, you would see that in some Yamaha structures, there is a portion of their snowmobile seat that is the part of plastic or the, which was the prior art. And then there's a part that would be perhaps referred to as a cellular structure. Or some kind of foam. That's right. But with regard to cellular structure, again, that should not be read into the claims. As a matter of fact, if you were to redefine base section to mean a cellular structure, which encompasses both an open and closed cellular structure, this would be contrary to the specifications which teach that an open cell structure is detrimental because it can soak up water and increase the weight of the seat. The boss also attempts to read into the definition of base section the modifier at least. And that's improper because at least is recited specifically in the claims, including some of the claims that boss wants to add at least to the construction of the base section. And that issue came up in the case of Helmsdorfer versus Bobrick. And the court there indicated that it would be improper to read into the construction at least when the patentee had specifically included at least in other parts. The other thing that boss does, of course, is it has changed its construction of base section repeatedly. And in its present construction, it provides no support. There's nothing said about support that's been deleted from the constructions that it relied upon before the district court. And that makes no sense because in each of the patents, it states that the base section provides support for the seat. Let me turn briefly to- We're out of time, so to be brief. Okay, I want to refer basically to the construction of adjacent. And adjacent is used in the written description of the 317 patent to be next to or adjoining. It is used in reference to corners formed between adjacent sides of the base section 240. And that's in 317, column 9, lines 5 to- It's in column 9. And as boss concedes in their brief, the sides of an object can only be in a corner if they are next to or adjoining each other. And according to boss, adjacent should be given one meaning in the specifications and another meaning in claim 5 of the 317 patent. And- So you said column 9, line 5 of the 317? Yes. Column 5.  I can't find it right now. I can find it in just a moment. The other thing is that really the argument by boss that adjacent should be construed to mean simply close to is based entirely on the fact that one embodiment shows that it is not next to but it's close to. However, it's clear that a claim need not be construed to cover all disclosed embodiments. And there are many cases decided by this court where subject matter has been included in the specification but not claimed. And furthermore, the district court's construction of adjacent does not exclude any embodiment because other claims are available to cover that embodiment. For example, if you look at claim 10 of the 317 patent, it is also directed to the storage cavity and does not use the term adjacent. Let me just- Thank you, Mr. Waters. We do have- It's column 9 at lines 50 to 54. Thank you. Thank you. The word adjacent used in the claim relates to the relationship between the storage compartment and the open cell phone. And it would be, I believe, improper to take use of the word in a context that clearly is not pertinent to the claim interpretation and try to apply that to the word adjacent. It is quite clear from the drawings that the storage compartment simply has to be close to the open cell phone, not next to or adjoining. And indeed, there is nothing in the patent that suggests that as used in the claim, the word adjacent was meant to embody only one particular embodiment. As this court has indicated in the CCS fitness case, you should construe claims to cover all known types of structure that the patent disclosure supports if there is nothing that would otherwise limit it. Second, there was some discussion with regard to item 46 in the figures, at least in the 630 and 149 patent, as being a base or bottom. And that is incorrect. Item 46 is a cabinet, as described in the patent specifications. In the 149 patent, it's in column 4, line 58. In the 630 patent, it's column 4, line 14. In the 317- Let me ask you, you're correct that it's described as a cabinet. Yes. However, the line, it would have been more appropriate if the line going from 46 had gone to the middle of the cabinet rather than that upper line. But what I'm saying is, nevertheless, there is a line up there to which the 46 goes. And so while you're correct that that indicates body cavity in the spec, isn't that line in the drawing to which the line from the 46 goes a bottom part of the base section, although an upper part? No, Your Honor. I think if you look at figure 6, for example, where item 46 is shown, it makes it quite clear, or it makes it clear that 46 is this cavity that exists there. So if you look at figure 6, you'll see that 46 goes not to simply, when it describes a cavity, it's an area there, not the bottom. I think that the issue, again, is- This is figure 6? Figure 6 of the 630 patent of the 149 patent. I think it's figure 6 of all the patents. Well, there's some additional ones later on in the numbering changes. For example, in the 317 patent, 46 becomes 47 in terms of the points. In addition, I think Judge Gallarza was quite correct that the starting point should be the intrinsic evidence. And only if it's not clear should there then be resort to extrinsic evidence. Here, the district court started with the dictionary definition under the guise of describing it as the plain and ordinary meaning, and then went to the intrinsic evidence to see if that somehow varied it. But I think if you start with the intrinsic evidence and keeping in mind that it's a comprising claim and the language in the specification, it's quite clear that the base section is only at least part of the bottom. Finally, with respect to the questions about the discovery issues, if the court reverses the claim construction rulings, which we believe it should, then the court should address the discovery issues because they will certainly be, if you will, live issues on remand. The district court has issued its decision, we think, incorrectly and without any justification. And at a minimum, those discovery issues should be vacated, or the discovery ruling should be vacated. However, we think on the evidence before the court, it would be an abuse of discretion and under any circumstance for the district court not to grant our motions. Thank you very much. I'm not sure I understood all the questions. Thank you.